**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

_____

| | | |
|---|---|---|
| VICTOR J. VELASCO, | : | |
| | : | CASE NO. 11 CV 463 (JCH) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LIEUTENANT HALPIN, LIEUTENANT | : | |
| DOUGHERTY, INVESTIGATOR SWEET, | : | |
| COUNSELOR DAMIAN DORAN, AND ACTING | : | |
| DISTRICT ADMINISTRATOR JOHN ALVES, | : | |
| | : | |
| Defendants. | : | February 21, 2018 |

_____ :

## AMENDED COMPLAINT

The plaintiff, Victor J. Velasco II, for this complaint states the following:

### PARTIES, JURISDICTION AND VENUE

1. The plaintiff, Victor J. Velasco II, was confined in Corrigan Correctional Center, located at 986 Norwich/New London Turnpike, Uncasville, Conn. 06382, from May 25, 2010 thru December 23, 2010.

2. The plaintiff is currently housed at Northern Correctional Institution at 287 Bilton Road, Somers, Conn 06071.

3. The plaintiff is and was at all times mentioned herein, an adult citizen of the United States and a resident of the State of Connecticut.

4. Defendant Lieutenant Halpin was at all times relevant herein the Disciplinary Hearing Officer/D.H.O. at Corrigan Correctional Center in the city of Uncasville.

5. Defendant Lieutenant Dougherty was at all times mentioned herein, the Unit Manager of E Unit and the Disciplinary Coordinator at Corrigan Correctional Center in the city of Uncasville.

6.     Defendant Corrections Officer Sweet was at all times relevant herein, the Disciplinary Investigator at Corrigan Correctional Center in the city of Uncasville.

7.     Defendant Damian Doran was at all times relevant herein, a Correction Counselor and the appointed Advocate for the plaintiff at Corrigan Correctional Center in the city of Uncasville.

8.     Defendant John Alves was at all times relevant herein the Acting District Administrator at/of Corrigan Correctional Center in the city of Uncasville.

9.     Defendant Halpin is the Hearing Officer and is required to uphold the Department of Corrections Administrative Directives.  He is sued in his individual and official capacities.

10.     Defendant Dougherty is the Disciplinary Coordinator and is required to uphold the Department of Corrections Administrative Directives.  He is sued in his individual and official capacities.

11.     Defendant Sweet is the Disciplinary Investigator and is required to uphold the Department of Correction's Administrative Directives.  He is sued in his individual and official capacities.

12.     Defendant Damian Doran is a Corrections Counselor and was assigned to assist the plaintiff in his defense as an advocate and is required to uphold the Department of Correction's Administrative Directives.  He is sued in his individual and official capacities.

13.     Defendant John Alves is the Acting District Administrator and is required to uphold the Department of Corrections Administrative Directives.  He is sued in his individual and official capacities.

14.     This action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the First, Fourth, Eighth and

Fourteenth Amendments to the United States Constitution.   This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343.

15.     Plaintiff's claims for injunctive relief are authorized by Rule 65 of the Federal Rules of Civil Procedure.

16.     This cause of action arose in the District of Connecticut.   Therefore, venue is proper under 28 U.S.C. § 1391(b).

## PREVIOUS LAWSUITS BY PLAINTIFF

17.     Plaintiff has filed no other lawsuits dealing with the same facts involved in this action.

18.     Plaintiff has filed other lawsuits, however, none have dealt with any issues arising herein.

19.     None of the Defendants have ever been the subject of legal action by the plaintiff until now.

## EXHAUSTION OF ADMINSITRATIVE REMEDIES

20.     The plaintiff has exhausted his administrative remedies in accordance with the Prison Litigation Reform Act with respect to the claims brought herein.   In this instance, the plaintiff's only avenue for remedy falls under a disciplinary appeal form per the Department of Correction's Administrative Directive 9.6 Inmate Administrative Remedies section 9.

## STATEMENT OF CLAIM

21.     At all relevant times herein, Defendants were "persons" for the purposes of 42 U.S.C. § 1983 and acted under color of law to deprive the plaintiff of his federal rights, as set forth below.

## STATEMENT OF FACTS

22.     On September 29, 2010, the plaintiff was placed in the Restrictive Housing Unit (R.H.U.) at Corrigan Correctional Center.

23.     On September 29, 2010, the plaintiff received a copy of a Restrictive Housing Unit Status Order which gave the plaintiff no reason why he was placed in R.H.U.

24.     The Restrictive Housing Unit Status Order stated the reason why another inmate was placed on administrative detention and stated the following:  "The inmate's/my continued presence in the general population poses a serious threat to life, property, self, other inmates, and/or the security of the facility because:   I/m Perez, Jeremiah #280171 is placed on administrative detention pending a custody investigation."

25.     On September 30, 2010, the plaintiff received a Disciplinary Report at 9:08 AM for Security Risk Group Affiliation.

26.     The description of violation for that report stated:  "During a routine shakedown of a cell belonging to a S.R.G. Latin King member, documentation of an internal investigation initiated by the Latin Kings was found.  Within the investigation package, documentation was found that was submitted by I/M Velasco.   In accordance with A.D. 9.5, Code of Penal Discipline, as outlined by Connecticut Department of Correction, this type of behavior clearly displays association with the Security Risk Group, The Latin Kings."

27.     The physical evidence for that report stated, "Investigation package."

28.     On September 30, 2010, the plaintiff signed a plea of guilt and was given the following sanctions:  7 (seven) days Punitive Segregation; 15 (fifteen) days Loss of Recreation; and 30 Days Loss of Commissary.

4

29.     The plaintiff was allowed to return to the Security Risk Group Unit "E" on October 6, 2010.

30.     The plaintiff was housed in cell E-206.

31.     The plaintiff asserts that he was permitted 45 minutes of exercise time in the S.R.G. Unit "E" (when not on Loss of Recreation) 5 days per week in an outside recreation yard.

32.     The plaintiff asserts that he was permitted to possess his digital color television which he purchased from the prison commissary while he was in the SRG Unit "E" at Corrigan Correctional Center.

33.     The plaintiff asserts that he was not subjected to strip searches every time he was to exit his cell while he was in the S.R.G Unit "E" at Corrigan Correctional Center.

34.     The plaintiff asserts that he was not made/forced to wear handcuffs behind his back for the entire duration of his out of cell time while in the S.R.G. Unit "E" at Corrigan Correctional Institution.

35.     The plaintiff asserts that he was permitted to possess all of his personal property with the exception of:

)   14 (fourteen) pairs of socks

)   10 (Ten) T-shirts

)   2 (two) combs

)   1 (one) hairbrush

)   6 (six) soapdishes

)   2 (two) thermal coffee cups

)   2 (two) clear plastic drinking cups

)   2 (two) clear plastic toothbrush holders

⟩ commissary items of food

⟩ 25 (twenty-five) stamped envelopes

These items somehow went missing in the seven hours and ten minutes on May 25, 2010, the day the plaintiff transferred to the Corrigan Correctional Center.

36.     On November 10, 2010, Lieutenant Dougherty ordered the plaintiff's placement in the Restrictive Housing Unit and filled out form 9401/1 which stated: "I/M Velasco, Victor #213065 was placed in R.H.U. pending a Class A Discipline for S.R.G. Affiliation."

37.     On November 10, 2010, the plaintiff received a disciplinary report for Security Risk Group Affiliation which was delivered at 3:20 P.M.

38.     The description of violation for that report stated, "On 11-10-10 at 1:30 P.M., while searching cell E-206, this officer found (7) pages of S.R.G. "Latin King," material hidden between the desk and far wall of the cell.  Inmate Velasco, Victor resides in cell E-206 and is the known "Latin King" in E-206."

39.     There are no witnesses on the report to the alleged discovery.

40.     The physical evidence for that report stated, "(7) pages of "Latin King" material."

41.     On November 15, 2010, Defendant Lieutenant Dougherty upgraded the original charge of S.R.G. Affiliation to Security Risk Group Threat Member by altering the original report of November 10, 2010.  There is no existing violation of "Security Risk Group Threat Member" in the published list of class A violations in the Administrative Directive 9.5, Code of Penal Discipline.

42.     On November 10, 2010, defendant Lieutenant Dougherty filed an Incident Report – Supplemental Page CN 6601/3, report number CRCC-2010-027, in which he clearly states:

"I recommend that I/M Velasco's charge be upgraded to Threat Member **based on the contents of the letter**." (Emphasis added.)

43.     On November 15, 2010, defendant Sweet delivered the altered report to the plaintiff at 12:00 P.M.

44.     The report number for that report is RCC 10 11 036.

45.     On November 15, 2010, defendant Sweet in his capacity as Investigator asked this plaintiff if he desired to call witnesses and this plaintiff stated "Yes" and named Warden Erfe, Lieutenant Williams, Captain Alderucci and inmate Richard Perry #312022.

46.     Defendant Sweet refused to record Richard Perry on his report and directed this plaintiff to address this with his advocate if one is appointed.

47.     Defendant Sweet asked this plaintiff if he would like the assistance of an advocate and this plaintiff stated "Yes."  Defendant Sweet assigned Correction Counselor Damian Doran to the plaintiff to serve as advocate and told this plaintiff to sign his Investigation Report which this plaintiff did.

48.     The plaintiff told Defendant Sweet that the plaintiff will speak through his advocate.

49.     Defendant Sweet typed this up.

50.     On November 30, 2010, the plaintiff met with his appointed advocate, Defendant Doran, and requested that Defendant Doran get the plaintiff a copy of the evidence being used against this plaintiff and Defendant Doran stated he will not be able to get the copies.

51.     On November 30, 2010, because the plaintiff was not made aware of the specific conduct of which the charge of "Threat Member" was reliant on, the plaintiff had no choice, but

to prepare a broad defense statement which the plaintiff had written by hand and then submitted to his advocate.

    52.    The submitted statement consisted of five pages of handwritten statement and several supporting documents which included:

    i.    Disciplinary Report number RCC 10 11 036;

    ii.    Disciplinary Report number RCC 10 11 035;

    iii.    Restrictive Housing Unit Status Order of 11/10/10 by Lieutenant Dougherty;

    iv.    Copy of letter from A.C.L.U. to the plaintiff dated August 6, 2010;

    v.    Copy of letter from attorney Nicole Anker of the Department of Correction Legal Affairs Unit to the A.C.L.U.;

    vi.    Copy of letter from A.C.L.U. (American Civil Liberties Union) to attorney Nicole Anker;

    vii.    Copy of letter from the A.C.L.U. to Andrew J. O'Keefe, Chairman of the Freedom of Information Commission;

    viii.    Copy of letter sent to the State of Connecticut Department of Correction from the Freedom of Information Commission;

    ix.    Copy of letter from the Freedom of Information Commission to the plaintiff, David Machernis, State of Connecticut, Department of Correction and State of Connecticut, University of Connecticut Health Center, Correctional Managed Health Care;

    x.    Copy of the Department, Administrative Directive 9.5, Code of Penal Discipline; and

xi.     Copy of Disciplinary Report number RCC 10 10 005 and Disciplinary Process Summary Report number RCC 10 10 005.

53.     On December 2, 2010, after the plaintiff had spent 23 days (15 business days) in the Restrictive Housing Unit without ever being afforded the opportunity to have access to cleaning materials or disinfectants to clean his (plaintiffs) cell which includes a sink and toilet which housed two inmates that had to eat every meal in the same cell together with no personal property and not permitted to have any soap within the cell, only then was the plaintiff afforded a Disciplinary Hearing.

54.     At the Disciplinary Hearing presided Defendant Lieutenant Halpin as the Disciplinary Hearing Officer and factfinder.

55.     The Disciplinary Hearing Officer Lieutenant Halpin did not allow the plaintiff to enter in his defense which Defendant Damian Doran was assigned to assist with.

56.     Defendant Halpin did not ensure that the hearing was impartial.

57.     Defendant Damian Doran as advocate appointed did not interview the plaintiff's witnesses, nor did he help the plaintiff present his case before the Hearing Officer.

58.     Defendant Damian Doran, as advocate appointed by the Defendant Investigator Sweet, appeared before the Hearing Officer and instead of assisting this petitioner in presenting his defense, stated to the Hearing Officer:  "There is sufficient evidence that Inmate Velasco authored the letter in question.  It is clear to this writer that the letter indicates that inmate Velasco holds ? ? ? . Inmate Velasco should be found guilty of the charge SRG – Safety Threat Member."

59.     The Connecticut Department of Correction has established a policy known as Administrative Directive 9.5, Code of Penal Discipline, which governs matters involving inmate disciplinary process and functions of all persons duties whom participate in such proceedings.

60.     Administrative Directive 9.5, section 25 is entitled "Advocate."

61.     Section 25 states, "***The advocate shall assist the inmate in preparing a defense***, and appear at and assist in making a presentation at a formal disciplinary hearing." (Emphasis added).

62.     The plaintiff was not permitted any writing utensil nor writing paper at the hearing and was handcuffed thus he (plaintiff) could not, in writing, withdraw his request for an advocate at the time of the hearing.

63.     The plaintiff's advocate, Defendant Damian Doran, never showed the plaintiff the evidence (7 pages of Latin King material according to the disciplinary report given to the plaintiff) being used against him.

64.     The Department of Correction's Administrative Directive 9.5, Code of Penal Discipline, section 12, subsection W, is entitled "Security Risk Group Safety Threat" and defines such as:  "Activity, behavior, status as a recognized Security Risk Group leader or involvement in an event associated with a Security Risk Group which jeopardizes the security and order of the facility."

65.     The disciplinary report for the offense of "Security Risk Group Threat Member" does not specify whether it relies on any known offense in accordance with the established rules of the Department of Correction or if this is an unpublished offense with its own definition of which prisoners are not permitted access to.

66.    The disciplinary report for the offense of "Security Risk Group Threat Member" is impossible to defend against since the petitioner's Advocate did not investigate the charge to see if the offense was actually an offense under Department of Correction policy and did not report to the plaintiff of such.

67.    On December 10, 2010, the plaintiff filed a request under the Freedom of Information Act to Deputy Warden Don Cyr of Corrigan-Radgowski Correctional Center, (8) eight days after the plaintiff had a disciplinary hearing for the offense of Security Risk Group Threat Member, requesting:

    i.    (7) pages of Latin King material used as evidence for disciplinary report # RCC 10 11 036;

    ii.    Incident Report of Lieutenant Dougherty for the above mentioned disciplinary report;

    iii.    Advocate Investigation form for the above mentioned disciplinary report; and

    iv.    Disciplinary Investigator's report for the above mentioned disciplinary report.

68.    The plaintiff made this request after the hearing because the appointed Advocate did not present a copy of the evidence against this petitioner to the petitioner and when this petitioner made an oral request for the evidence being used against this petitioner to the Hearing Officer, Defendant Halpin, the Hearing Officer told this plaintiff he would not allow *anyone* to give this plaintiff a copy of the evidence.  He did not say why.

69.    On December 16, 2010, Deputy Warden Don Cyr acknowledged receipt of the plaintiff's request for documents under the Freedom of Information Act.

70.    On January 3, 2011, Deputy Warden Don Cyr again wrote/typed another response to this plaintiff pertaining to the plaintiff's Freedom of Information Request of December 10,

2010 informing this plaintiff that he forwarded the documents responsive to this plaintiff's Freedom of Information request to the Freedom of Information Administrator, Joan Ellis, at State of Connecticut, Department of Correction, 24 Wolcott Hill Road, Wethersfield, CT 06109 for review due to the content as it may be considered "Safety and Security" matter.

71.     On January 11, 2011, this plaintiff received a letter from Joan Ellis stating: "The above request was forwarded to this office for review and redactions by Corrigan Radgowski Correctional Center.  Submit a check to the above address made payable to "Treasurer, State of Connecticut" in the amount of $7.75 (31 copies @ $.25 per copy) to cover the cost of the copies.  The documents will be provided upon receipt of payment."

72.     On January 20, 2011, the plaintiff again received a letter from Joan Ellis Enclosing a copy of redacted documents.

73.     The (7) seven pages of "Latin King" material which this plaintiff requested were not included.  No reason given as to why they were not included.

74.     The Department of Corrections Administrative Directive 9.5, Code of Penal Discipline also states the violation of Security Risk Group Affiliation under section 12(V) which states:  "Possessing or displaying any materials, symbols, colors or pictures of any identified security risk group; or behavior uniquely or clearly associated with a security risk group."

75.     The plaintiff's advocate, Defendant Damian Doran, failed to:

    A. Show the plaintiff any copy of or original documentation of *any* evidence used against the plaintiff before, during or after the disciplinary hearing;

    B. Collect statements or secure testimony from the plaintiffs selected witness; and

    C. Assist the plaintiff in making, presenting or preparing a defense to the charge of "Security Risk Group Threat Member."

76.     The plaintiff made a defense of retaliation against the Department of Correction and the medical department and as the grounds for the presenting of the upgraded charge of 11-15-10.

77.     In a meeting for a hearing before the Freedom of Information Commission's hearing officer Clifton A. Leonhardt, Esq., the Director of Correctional Managed Health Care of Northern Correctional Institution testified under oath that "when in November 2010 the complaint to the Commission came to the attention of Richard Furey, the supervisor of respondent Machernis at Northern Correctional Institution, Mr. Furey promptly telephoned his counterpart, the Director of Correctional Managed Health Care at Corrigan-Radgowski Correctional Center.

78.     Richard Furey's testimony was in regards to Docket Number F.I.C. 2010-226, Velasco v. Machernis, before the Freedom of Information Commission.

79.     The plaintiff made (9) nine claims in his retaliation defense to the Security Risk Group Threat Member offense.  The claims are:

"Claim #1

        I do not claim ownership of the "Latin King" material allegedly "found" in cell E-206.  E-206 was occupied by two inmates.  Only one received a Disciplinary Report.


"Claim #2

        Reporting officer does not state any witnesses to attest to the discovery he allegedly made in cell E-206 at 1:30 P.M.

"Claim #3

I show proof in the reporting officers own handwriting and in his own words that at the time of his alleged "discovery," he was in fact in another cell at the exact time he claims to have been in cell E-206.  The reporting officer wrote another Disciplinary Report (#RCC 10 11 035) against inmate Richard Perry (#312022) and in said report writes, "On 11-10-10 AT 1:30 P, while searching cell E-205 . . . ."

In the charge against me he writes "On 11-10-10 AT 1:*30* P, while searching cell E-206 . . . ."  This is impossible to be in two places at the same time.  I claim his report to be false.


"Claim #4

The Custody Supervisor/Unit Manager Review was signed by Lieutenant Kunetz and completed at 2:10 P.M. on 11/10/10.  However, Turner, the reporting officer, signed his signature and completed his report at 2:*24* PM.  A full 14 minutes after the Custody Supervisor/Unit Manager Review.  I claim the report was not properly reviewed as evidenced by the different times recorded on the report.


"Claim #5

The charge of SRG was substituted by Lieutenant Dougherty to SRG Threat Member on 11-15-10.  Three days after the D.O.C. Commissioner received copies of legal notices from the F.O.I.C. which were mailed on November 12, 2010.  This alone could be mere coincidence, but it cannot be ignored that Lt. Dougherty was on duty on 11-10-10 and so filled out form CN 9401/1, "Restrictive Housing Unit Status Order"

placing me in Restrictive Housing for "SRG Affiliation" after reviewing the charge and not substituting it.  Lt. Dougherty signed and dated this form:  11/10/10.

Within 72 hours after being removed from population, the Unit Administrator reviewed my case in accordance with the 9.5 A.D. section 20, or so I presume.  However, 5 days after the initial Disciplinary Report was written and three days after a notice was sent to D.O.C. from the F.O.I.C. pertaining to a civil matter I filed, L.T. Dougherty raises the charge to SRG "Threat Member," in retaliation for filing complaints and grievances/administrative remedies.

"Claim #6

The description of violation does not fall under the requirements to support a charge of SRG "Threat Member" as described in section 12(W) of the 9.5, Administrative Directive.  In fact, section 12(V) is the closest possible charge that can be made with the description of violation the reporting officer wrote on the Disciplinary Repot.  To claim "Threat Member" and not state why in a manner that allows me to prepare a defense to such charge violates due process since there's no way to defend against unfounded charges.

"Claim #7

The 9.5 Administrative Directive states that the time frame for a Disciplinary hearing shall be convened no later than seven (7) business days of the date of the disciplinary report (See A.D., 9.5., section 31 "Hearing (A))."  The Defendant has been

waiting for a hearing to be convened since the 10th (which is the date on the ticket) and it has been over 12 business days without a hearing.

The 9.5 Administrative Directive section 31(b) clearly states "An accused inmate shall be present at the disciplinary hearing."  The **accused** has not heard of any continuances and neither has the Hearing Officer since there was never a hearing to begin with and if there was, then it would constitute a procedural failure since the accused requested an advocate and section 25 of the Administrative Directive 9.5 states "An advocate shall meet with the inmate at least 24 hours **prior** to the hearing . . . ."

To hold or convene a hearing without permitting the accused to meet with his advocate is a serious procedural failure in and of itself since the accused is kept in a Restrictive Housing Unit and is stripped of all his property and lacks the freedom to research or prepare an objection to a request for continuance if it lacks good cause because no notice was given to the accused.

Furthermore, a request for continuance falls under A.D. 9.5, section 31 <u>Hearing</u> (C).  It states "a disciplinary hearing may be **continued** . . . ."  It **does not** state that a disciplinary hearing may be "**postponed**."

"Claim #8

"The Investigator shall conduct an investigation into the circumstances of each disciplinary report that goes to hearing and gather all information deemed relevant to the disciplinary report."  This has not been done by the investigator (Sweet) whom would have found such issues as I have brought to light here.  This quote comes from the A.D. 9.5, section 24.  From this same section it states "The Investigator shall prepare a

hearing docket and *ensure* that a disciplinary report is brought to hearing in accordance with the time frame established in Section 31(A) of the Directive and shall ensure that the inmate, any witnesses, the advocate and evidence along with appropriate forms are available at the scheduled hearing."

Obviously the Investigator figured the time frame established did not apply to me. Further evidence of retaliation.


"Claim #9

The final Claim is that the 9.5 Administrative Directive section 44, states, "Any exceptions to the procedures in this Administrative Director *shall require prior* written approval from the Commissioner."

Because so many exceptions have been made to the procedures in this instance, *prior written approval* from the Commissioner must exist.  And so shows that the Commissioner acted *knowingly* and deliberately set out to retaliate against the accused where just over a month ago, this accused was given another SRG disciplinary report and ordered to either sign the ticket or be subjected to more disciplinary actions and lose my property.  And a threat to be once again sent to Northern.  In violation of the Directive the Investigator made me place my signature on the ticket.  I am tired of being threatened, harassed, and punished for legally seeking redress from the government. This charge should be dismissed for procedural failure.  In conjunction, these amount to more than "minor discrepancies."

80.    Defendant Sweet, in an investigation report that was mailed to this plaintiff from Joan Ellis after the disciplinary hearing, writes/types "The paperwork that was recovered was

hand written by I/M Velasco, which was matched with two hand writing samples recovered from I/M Velasco's inventoried property and from his current RHU Cell." Not once did Defendant Sweet claim to be a handwriting expert nor did he claim that he has ever actually observed this plaintiff write anything – ever, to allow him to definitively state that anything was "matched" to this plaintiff's handwriting.

81.   Defendant Sweet did not enter any "handwriting samples" into evidence before, during or after the hearing.

82.   The plaintiff was not made aware by his advocate that any "handwriting samples" were logged as evidence against this plaintiff and such "handwriting samples" was not made available to the plaintiff to dispute or challenge the findings.

83.   On December 2, 2010, the petitioner filed an appeal to Defendant John Alves.

84.   In the plaintiff's appeal it was stated:

"The D.H.O claims a 'criteria of some evidence presented' and 'evidence presented' on as his bases for finding.  He does not rely on the nature of the evidence, only that *some evidence presented*.  This criteria does exist in the Supreme Court decision in *Hewitt v. Helms*, U.S. 103 S.Ct. 864 (1983).  However, this case only addresses prisoners whom are placed in segregation *for investigations*.  Because I was placed in segregation for an act of alleged misconduct, I am entitled to the disciplinary safeguards of *Wolff v. McDonnell*, 418 U.S. __.  Under Wolff, prisoners facing disciplinary charges are entitled to a written statement of the evidence that a decision is based on *and* the reasons for the action taken *and* the right to present documenting evidence.  The Supreme Court in *Wolff*, states that the notice that is given of a disciplinary hearing must describe "specific conduct upon which the charges are based."  A finding of guilt

must also be reasonably specific.  The hearing officer made no mention of consideration of my statement or evidence nor did he state why he made the decision, ***specifically***.

"There is absolutely no possible way to defend against a charge of Security Risk Group Safety Threat Member when the ticket does not allege any violation of the 9.5 Administrative Directive section 12(W).  What type of kangaroo court is this?  And the investigator didn't even get a statement from Capt. Alderucci as I requested.

"The only facts are what the disciplinary report states and those facts only point to a violation of the 9.5 Administrative Directive 12(V).  D.o.C. placed me in a gang unit because I am designated a Latin King.  I did not come from general population.  I present this along with my original statement I submitted to the Disciplinary Hearing Officer Lieutenant Halpin.

"If after I've explained the violation to my civil rights as I have done here and my appeal is denied, the reviewing supervisor is considered to be "personally involved" in a constitutional violation where the supervisor, "after learning of a violation of my rights, failed to remedy the wrong."  (*Williams v. Smith*, 781 F.2d 319, 322-24 (2d Cir. 1986) (describing the ways in which supervisors may be found liable under § 1983)).

"I am claiming procedural failure.  I also claim a violation to the equal protection clause where a little over a month ago I was given an S.R.G. disciplinary report with ***more*** than 7 pages of 'Latin King Material' and was not given a trumped-up charge of 'Threat Member.'  And the evidence here comes from the evidence there I believe.

"I also claimed a retaliation defense which should have mooted the criteria the Disciplinary Hearing Officer relied on of "some evidence presented."  And the Disciplinary Hearing Officer does not clarify who's evidence he is mentioning because I submitted

documentary evidence too.  I want this ruling reversed and you have been placed on notice of violation."

85.    Defendant John Alves responded to the plaintiff's appeal and denied the appeal on January 3, 2011.

86.    Defendant John Alves also claimed that the petitioner has exhausted D.O.C.'s Administrative Remedies.

87.    In a letter dated January 3, 2011, defendant John Alves states:

"Dear Mr. Velasco:

"I am in receipt of your correspondence dated December 2, 2010 regarding the appeal of a Class A Disciplinary Report RCC #10-11-0036 for Security Risk Group Safety Threat Member Affiliation 'Latin King.'

"At this juncture I do not retry the report, but merely evaluate the facts.  With this, I have reviewed your appeal and found no errors in the due process; therefore I am upholding your finding of guilty."

88.    Defendant John Alves uses this cover letter to respond to all inmates' appeals regardless of the charge unless the inmate requesting his/her appeal to be heard can provide a service to a D.o.C. employee directly or indirectly and granted the employee is high enough in the chain of command to influence defendant John Alves.

89.    The plaintiff received a 'Flagrant Disobedience' disciplinary report for which the plaintiff subsequently appealed to Defendant John Alves and received another so similar, if not exactly word for word, letter in response to the appeal that the plaintiff looked into several other inmates appeal responses only to find that they were almost exactly the same to one another. Defendant John Alves does not review appeals for inmates, he only denies them uniformly.

90.    Defendant John Alves as supervisor over defendants Dougherty, Halpin, Sweet and Doran, as well as supervisor over the disciplinary process should be held liable for deliberate wrongdoing or bad faith use of the disciplinary process against the plaintiff.

**WHEREFORE**, plaintiff requests this Honorable Court grant the following relief:

A.  Issue a declaratory judgment that defendants violated the United States Constitution and state law;

B.  Issue an injunction ordering that defendants:

    1.  Be removed from their positions of disciplinary management;

    2.  Cease all retaliatory treatment of plaintiff;

    3.  Disciplinary decision be overturned;

    4.  Restore the plaintiff's disciplinary record to its status of 9/28/10;

    5.  Utilize a method (i.e., tape record, video record, audio record) to record the hearings in their entirety; and

    6.  Cease disciplining the plaintiff for the same offense when it is clear that the plaintiff was already recognized and penalized by the Department of Correction for the same offense and where the plaintiff has already admitted that he is a Latin King.

C.  Grant compensatory damages in the following amount:

    1.  $7,000.00 against Defendant Doran in his official capacity and $7,000.00 in his individual capacity;

    2.  $10,000.00 against defendant Sweet in his official capacity and $13,000.00 in his individual capacity;

3.  $25,000.00 against defendant Dougherty in his official capacity and $34,000.00 in his individual capacity;

4.  $40,000.00 against defendant Halpin in his official capacity and $50,000.00 in his individual capacity; and

5.  $40,000.00 against defendant John Alves in his official capacity and $50,000.00 in his individual capacity.

D.  Grant punitive damages of $10,000.00 against each of the defendants.

E.  Grant such other relief as it may appear plaintiff is entitled.

F.  Grant attorneys fees to the plaintiff.

**PLAINTIFF VICTOR JOSE VELASCO II**

By:  _/s/ Andrew P. Giering_
David A. Ring (ct14362)
Andrew P. Giering (ct29332)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
Tel: (203) 498-4400
Fax: (203) 782-2889
Email: dring@wiggin.com
Email: agiering@wiggin.com

## **<u>CERTIFICATION OF SERVICE</u>**


I hereby certify that on February 21, 2018 a copy of the foregoing Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

<u>     */s/ Andrew P. Giering*     </u>

Andrew P. Giering